## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

*In re:*                                                          Chapter 11

**ENDEAVOUR OPERATING**                                            Case No. 14–12308 (KJC)
**CORPORATION, *et al.*,**[1]

                                                                   **(Jointly Administered)**

**Debtors.**

                                                                   Hearing Date:  3/11/15 at 2:00 p.m. (ET)
                                                                   Objection Deadline:  2/20/15 at 4:00 p.m. (ET)
------------------------------------------------------------ x

## MOTION OF DEBTORS FOR ENTRY
## OF AN ORDER EXTENDING THE EXCLUSIVE PERIODS
## PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE

Endeavour Operating Corporation and its above-captioned debtor affiliates, as

debtors and debtors in possession (collectively, the "***Debtors***"),[2] respectfully represent:

### Jurisdiction and Venue

1.        This Court has jurisdiction to consider this matter pursuant to 28

U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States

District Court for the District of Delaware*, dated as of February 29, 2012.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of

Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of

Delaware (the "***Local Rules***"), the Debtors consent to the entry of a final order by the Court in

connection with this Motion to the extent that it is later determined that the Court, absent consent

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Endeavour Operating Corporation (6552); Endeavour International Corporation (8389); Endeavour Colorado Corporation (0067); END Management Company (7578); Endeavour Energy New Ventures Inc. (7563); Endeavour Energy Luxembourg S.à r.l. (2113).  The Debtors' principal offices are located at 811 Main Street, Suite 2100, Houston, Texas 77002.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, filed December 23, 2014 (D.I. 304) (the "***Proposed Plan***") or the *Disclosure Statement for the Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, filed on December 23, 2014 (D.I. 305) (the "***Disclosure Statement***").

of the parties, cannot enter final orders or judgments consistent with Article III of the United

States Constitution.

2.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409.

**<u>Relief Requested</u>**

3.     Section 1121(b) of title 11 of the United States Code (the "***Bankruptcy***

***Code***") provides 120 days after the commencement of a chapter 11 case as the period during

which a debtor has the exclusive right to file a chapter 11 plan (the "***Exclusive Filing Period***").

*See* 11 U.S.C. § 1121(b) ("Except as otherwise provided in this section, only the debtor may file

a plan until after 120 days after the date of the order for relief under this chapter.").  Section

1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day

Exclusive Filing Period, it has a 180-day period from its petition date to obtain acceptances of its

plan (the "***Exclusive Solicitation Period***," and, together with the Exclusive Filing Period, the

"***Exclusive Periods***").  The Debtors' initial Exclusive Filing Period and Exclusive Solicitation

Period currently are set to expire on Monday, February 9, 2015[3] and Wednesday, April 8, 2015,

respectively.

4.     Pursuant to section 1121(d) of the Bankruptcy Code, the Debtors request

extensions of (i) their Exclusive Filing Period for a period of 120 days through and including

---

[3] 120 days from the Petition Date is Saturday, February 7, 2015.  However, the Exclusive Filing Period ends on
February 9, 2015 because under Bankruptcy Rule 9006 a deadline that lands on a weekend is extended until the end
of the next non-weekend day.  *See* Bankruptcy Rule 9006 (stating that when computing time relating to a "period
stated in days or a longer unit of time: . . . (C) include the last day of the period, but if the last day is a Saturday,
Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or
legal holiday").

2

June 8, 2015,[4] and (ii) their Exclusive Solicitation Period for 120 days through and including August 6, 2015, without prejudice for the Debtors to seek additional extensions of such exclusivity periods.

5.      A proposed form of order approving the relief requested herein is annexed hereto as **Exhibit A**.

**Background**

6.      On October 10, 2014 (the "***Petition Date***"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

8.      On November 10, 2014, the Court entered the *Order (I) Authorizing Debtors to Assume the Restructuring Support Agreement Pursuant to Sections 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006 and (II) Modifying the Automatic Stay Pursuant to Section 362* (D.I. 169), which authorized the Debtors to assume the Restructuring Support Agreement (as herein after defined).  The Restructuring Support Agreement memorialized the terms that the Debtors and certain of the Consenting Creditors had agreed prepetition to base a consensual chapter 11 plan on.

---

[4] 120 days from Saturday, February, 7, 2015 is Sunday, June 7, 2015.  Thus, again applying Bankruptcy Rule 9006, because the deadline lands on a weekend, it is extended until the end of the next non-weekend day, which is Monday, June 8, 2015.

WEIL:\95214002\5\43794.0004

9.      On December 11, 2014, the United States Trustee for the District of Delaware (the "*U.S. Trustee*") appointed the Official Committee of Unsecured Creditors (the "*Committee*").

10.      On December 22, 2014, the Court entered the *Order (I) Approving Proposed Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling Confirmation Hearing and (IV) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan Pursuant to Sections 105, 502,1125, 1126 and 1128 of the Bankruptcy Code and Bankruptcy Rules 2002, 3003, 3017, 3018, 3020 and 9006 and Local Rules 2002-2, 3017-1 and 9006-1* (D.I. 297) approving the Disclosure Statement and establishing (i) December 22, 2014 as the voting record date, (ii) December 29, 2014 as the date the solicitation period commences, (iii) January 30, 2015 as the voting deadline for the Proposed Plan, and (iv) February 9, 2015 as the confirmation hearing date.

11.      The solicitation period commenced on December 29, 2014 and solicitation packages were mailed to creditors that same day.  *See Affidavit of Service of James Lee re: 1) Order (I) Approving Proposed Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling Confirmation Hearing and (IV) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan Pursuant to Sections 105, 502, 1125, 1126 and 1128 of the Bankruptcy Code and Bankruptcy Rules 2002, 3003, 3017, 3018, 3020 and 9006 and Local Rules 2002-2, 3017-1 and 9006-1; and 2) The Solicitation Package* (D.I. 332).  The solicitation period ended on January 30, 2015.

4

## The Debtors' Businesses

12.     The Debtors, together with their non-debtor affiliates, comprise an independent oil and gas company engaged in the acquisition, exploration and development of energy reserves and resources onshore in the United States ("*U.S.*") and offshore in the United Kingdom ("*U.K.*") North Sea.  The Debtors manage their domestic and overseas businesses from their headquarters in Houston, Texas.  Their U.S.-based businesses and assets include exploration licenses and/or producing properties located in Colorado, Louisiana, Montana, New Mexico, Pennsylvania and Texas and comprise approximately 8% of their proven reserves.  The Debtors' U.K.-based businesses and assets include exploration licenses and producing properties in the North Sea that comprise the remaining 92% of their proven reserves.  Only certain of the U.S.-based entities and one non-operating foreign entity are Debtors in these proceedings.  The Debtors' other foreign entities, which encompass their U.K.-based businesses, are not debtors in these cases and are continuing to conduct their businesses in the ordinary course.

13.     Additional information about the Debtors' businesses, capital structure and the circumstances leading to the commencement of these chapter 11 cases can be found in the *Declaration of William L. Transier in Support of the Debtors' Chapter 11 Petitions and Request for First Day Relief* (the "***Transier Declaration***") (D.I. 12), filed on the Petition Date.

## The Restructuring Support Agreement

14.     On October 10, 2014, prior to filing the Debtors' chapter 11 cases, the Debtors entered into an agreement (the "***Restructuring Support Agreement***") with certain of the Consenting Creditors that set forth the terms upon which the Debtors would seek to recapitalize and restructure their businesses pursuant to a consensual chapter 11 plan (the "***Consensual Restructuring***").  The Restructuring Support Agreement and the Consensual Restructuring were

WEIL:\95214002\5\43794.0004

the culmination of months of extensive negotiations between the Debtors and certain of the

Consenting Creditors.

15.     The Consensual Restructuring set the Debtors on a path toward a

successful balance sheet restructuring and swift emergence from chapter 11.  The broad support

garnered for the Consensual Restructuring from significant creditors throughout the Debtors'

capital structure reflected a consensus that the agreements embodied in the Restructuring Support

Agreement would best preserve the Debtors' enterprise value for the benefit of all creditors.

Additionally, such support increased the likelihood of a smooth and unobstructed route towards

confirmation of a plan that would significantly reduce the Debtors' debt burden and increase

their liquidity while returning meaningful distributions to creditors.

16.     The Consensual Restructuring was developed in an industry environment

where oil prices had remained relatively stable for the past four years.  Indeed, from early 2011

until shortly before the Petition Date, the spot price for Brent Crude Oil had fluctuated between

roughly $100 and $115 a barrel.  At the time the Debtors and Consenting Creditors executed the

Restructuring Support Agreement, the spot price for Brent Crude Oil had dipped slightly to

approximately $90 a barrel.

### The Debtors' Chapter 11 Cases

17.     With the Restructuring Support Agreement in hand, the Debtors filed their

chapter 11 cases on the Petition Date with a clear path forward. The foundation for confirmation

already laid, the Debtors worked diligently to implement the Consensual Restructuring.  The

Debtors (i) developed the Proposed Plan, which reflected the terms of the Restructuring Support

Agreement, (ii) obtained Court approval of the Disclosure Statement and procedures to solicit

votes to accept or reject the Proposed Plan, (iii) set a confirmation hearing for February 9, 2015,

(iv) facilitated negotiations amongst the Consenting Creditors regarding the terms of the various

6

corporate governance and securities documents required to implement the Proposed Plan, which culminated in the filing of the Plan Supplement, and (v) completed the solicitation of votes to accept or reject the Proposed Plan.

18.    Unfortunately, since the Petition Date, the oil and gas industry has faced significant economic headwinds.  Since the Petition Date, the spot price for Brent Crude Oil has dropped significantly, trading at times below $50 a barrel.  Likewise, the spot price for North Sea Natural Gas, which was $9 per million British thermal units ("*MMBTU*") on the Petition Date, has dropped to just over $7 per MMBTU.

19.    Because of the continuing drop in oil and gas prices, the Debtors decided to delay confirmation to consider the implications of the continuing decline on the Proposed Plan.  Thus, on February 3, 2015, less than a week before the scheduled confirmation hearing, the Debtors adjourned the confirmation hearing to a date to be determined to allow themselves time to further evaluate the financial impact of the recent industry downturn on the Debtors' business plan and the Proposed Plan's confirmation prospects.  *See Notice of Adjournment of Confirmation Hearing and Certain Related Deadlines*, filed February 3, 2015 (D.I. 417).

**Extending Exclusivity Will Further the Debtors' Ability to Reach a Consensual Resolution**

20.    The Debtors have been dedicated to a cooperative, consensual process since before the Petition Date.  To address current industry conditions, the Debtors have initiated discussions with, among others, the Consenting Creditors and their advisors and the advisors to the Committee regarding potential modifications to the Proposed Plan and the Restructuring Support Agreement.  Although these discussions are only in the preliminary stages, the Debtors are encouraged by the parties' willingness to engage on key issues.  Extension of the Exclusive Periods will further this cooperative dialogue by allowing the Debtors to maintain control over these chapter 11 cases and to continue to usher their disparate creditor groups toward a holistic

resolution without the interference and expense of addressing competing plan proposals. The

Debtors file this Motion to request the time needed to accomplish their chapter 11 objectives.

### The Exclusive Periods

21.     Extending the Exclusive Periods in these chapter 11 cases is appropriate,

in the best interests of the Debtors' stakeholders, and consistent with the intent and purpose of

chapter 11 of the Bankruptcy Code. The Debtors, indeed the entire oil and gas industry, are

currently operating in a different economic environment than just a few months ago. The

Debtors and their key creditors need additional time to understand the implications today's

relatively weak pricing will have on the Debtors' business plan and on confirmation of the

Proposed Plan. Adequately addressing these implications will require time for the parties to

explore potential changes to the contours of the Consensual Restructuring.

### Basis for Relief Requested

22.     Pursuant to section 1121(d) of the Bankruptcy Code, the Court may extend

the Exclusive Periods for cause. *See* 11 U.S.C. § 1121(d) ("[o]n request of a party in interest

made within the respective periods specified in subsections (b) and (c) of this section and after

notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-

day period referred to in this section."). The Debtors may seek extension of the Exclusive

Periods any time during the Exclusive Periods. *See* Local Rule 9006-2 ("[i]f a motion to extend

the time to take any action is filed before the expiration of the period prescribed by the

[Bankruptcy Code, Bankruptcy Rules, or Local Rules] or Court order, the time shall

automatically be extended until the Court acts on the motion, without necessity for the entry of a

bridge order."); *see also Matter of CPM Energy Sys., Inc.*, 103 B.R. 508, 508 (Bankr. D. Del.

1989) (noting that an extension request made on the 119th day or the original 120–day period

established by statute was timely). However, the 120-day period "may not be extended beyond a

8

date that is 18 months after the petition date" and the 180-day period "may not be extended

beyond a date that is 20 months after the petition date." *See* 11 U.S.C. § 1121(d). Cause exists

in these chapter 11 cases to extend the Debtors' Exclusive Periods because the Debtors need

additional time to evaluate shifting business conditions and negotiate modifications to the

Proposed Plan.

       23.     Congress included the Exclusive Periods in the Bankruptcy Code to afford

a full and fair opportunity for a debtor to propose a chapter 11 plan and enable solicitation of

acceptances of such plan without deterioration and disruption of a debtor's business that might

be caused by the filing of multiple competing plans. *See* H.R. Rep. No. 95-595, at 231-32

(1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give Bankruptcy

Courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded

opportunity to negotiate settlement of its debts without interference from other parties in

interest).

       24.     The initial 120 and 180-day Exclusive Periods provided in the Bankruptcy

Code do not give the Debtors sufficient time to react to the recent decline in oil and gas prices

since the Petition Date. As noted above, section 1121(d) of the Bankruptcy Code empowers a

Bankruptcy Court to extend such periods "for cause." Although the Bankruptcy Code leaves the

term "cause" undefined for purposes of section 1121(d), the legislative history of section 1121

indicates such term should be viewed flexibly "to allow the debtor to reach an agreement" with

parties in interest. H.R. Rep. No. 95, 9th Cong., 1st Sess. 232 (1997); *see also In re Public Serv.

Co. of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1998) ("[t]he legislative intent has

been construed to leave the question [of whether to extend the Exclusive Periods] to the

WEIL:\95214002\5\43794.0004

reorganization court in the exercise of its discretion and to promote maximum flexibility to suit various types of reorganization proceedings.").

25.    Thus, courts in this Circuit and in other jurisdictions have held the Bankruptcy Court may exercise broad discretion in determining whether to extend exclusivity, enabling the Bankruptcy Court to consider a variety of factors to assess the totality of circumstances in each case.  *See First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del 1986) ("Section 1121(d) provides the Bankruptcy Court with flexibility to either reduce or increase that period of exclusivity in its discretion."); *In re Borders Group, Inc.*, 460 B.R. 818, 821-22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity."); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying objective factors courts historically have considered in determining whether cause exists to extend or terminate exclusivity); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (identifying factors used by courts to determine whether cause exists to extend exclusivity); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98 (Bankr. E.D. Tex. 1996).

26.    In particular, courts typically examine the following nine factors to determine whether there is "cause" for an extension of the Exclusive Periods:

(i)      the size and complexity of the debtor's case;

(ii)     the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

(iii)    the existence of good faith progress towards reorganization;

(iv)     the fact that the debtor is paying its bills as they become due;

10

       (v)     whether the debtor has demonstrated reasonable prospects for filing a viable plan;

       (vi)    whether the debtor has made progress in negotiations with its creditors;

       (vii)   the length of time a case has been pending;

       (viii)  whether the debtor is seeking an extension of exclusivity to pressure creditors to submit to the debtor's reorganization demands; and

       (ix)    whether an unresolved contingency exists.

*See In re Cent. Jersey Airport Servs., LLC,* 282 B.R. 176, 183 (Bankr. D.N.J. 2002) (noting that courts consider the above nine factors in determining whether cause "exists justifying the grant of an extension"); *Adelphia Commc'ns*, 352 B.R. at 587 (noting that the nine factors listed above are "objective factors which courts historically have considered in making determinations of this character"); *see also Borders*, 460 B.R. at 822 (evaluating the nine factors to hold that debtor established cause to extend exclusivity); *McLean Indus.*, 87 B.R. at 834; *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.C. 1986) (holding that debtor showed cause to extend exclusive period based upon certain of the above nine factors).

       27.     As is demonstrated below, application of the above enumerated nine factors to the facts of the Debtors' chapter 11 cases demonstrates that, based upon the totality of the circumstances, ample cause exists to grant the requested extensions of the Exclusive Periods. The extensions are necessary and appropriate because they provide the Debtors the opportunity contemplated by the Bankruptcy Code to have a full and fair opportunity to propose a plan that takes into consideration the economic climate currently faced by the Debtors.  The extensions will provide the Debtors with the time needed to consider modifications to the Proposed Plan, or, if necessary, prepare a revised Disclosure Statement and re-solicit votes to accept or reject such a

modified plan from any holders of Allowed Claims that may be materially and adversely

impacted by such modifications.

*Factor One:  The Debtors' Cases Are Large and Complex*

> 28.    The Debtors' chapter 11 cases are undeniably large and complex.  The

Debtors' chapter 11 cases involve the restructuring of over $1.2 billion in secured and unsecured

debt, held by at least five (5) key groups of creditors.  Any attempt at modifying the Consensual

Restructuring requires the Debtors to coordinate with each of these groups.  As such, this factor

weighs in favor of an extension of the Exclusive Periods.

*Factor Two:  The Debtors Require Additional Time to Negotiate Potential Modifications to the
Proposed Plan*

> 29.    Due to the worldwide decline in oil and gas prices, the Debtors find

themselves – nearly four months into the cases – forced to consider their financial projections in

light of the current industry environment and whether modifications to the Restructuring Support

Agreement and the Proposed Plan are needed, and, if so, to discuss and negotiate any such

changes with their creditor constituencies.  Such a process will inevitably take time, and, thus,

this factor also weighs in favor of the requested extensions.

*Factor Three:  The Debtors Have Been Making Good Faith Efforts Toward Reorganization
Since Before the Petition Date and Continue to Do So*

> 30.    As evidenced by the Restructuring Support Agreement, the Debtors have

been dedicated to achieving a restructuring with the support of the majority of their capital

structure, and have been engaged in good faith efforts to do so, since before the Petition Date.

The Debtors continue to make good faith efforts toward developing a feasible restructuring plan

and are currently engaged in discussions with the Consenting Creditors and their advisors and the

WEIL:\95214002\5\43794.0004

Committee and their advisors on potential amendments to the Restructuring Support Agreement and the Proposed Plan that will accomplish this goal.

*Factor Four:  The Debtors Are Paying Their Bills as They Become Due*

31.    The Debtors have been paying their bills as they become due during the pendency of these chapter 11 cases.  *See Debtor-In-Possession Monthly Operating Report for Filing Period December 2014*, filed January 26, 2015 (D.I. 392).

*Factor Five and Six:  The Debtors Continue to Make Progress with Creditors Regarding Potential Modifications to the Proposed Plan*

32.    Although the Debtors do not intend to proceed to confirmation on their original schedule, the Debtors are engaged in productive discussions with multiple parties in interest regarding the Proposed Plan.  As previously noted, the Debtors are actively engaged in negotiations with certain of their creditors and are committed to continuing negotiations with their creditors to reach a successful resolution of these chapter 11 cases.

*Factor Seven:  The Debtors' Chapter 11 Cases Are Still in Their Early Stages*

33.    Since the inception of the Debtors' chapter 11 cases, the Debtors have worked diligently to facilitate an expeditious exit from chapter 11 based on the Consensual Restructuring.  Unfortunately, economic headwinds have slowed the Debtors' progress. Nonetheless, the Debtors' chapter 11 cases are still in their early stages, especially for cases of their size and complexity.  As such, the Debtors should be afforded additional time to consider, with their creditor constituencies, any modifications that may be needed for the Proposed Plan. Indeed, Courts in this district regularly grant initial extensions of the Exclusive Periods in large chapter 11 cases.  *See, e.g., In re Energy Future Holdings Corp.*, Case No. 14-10979 (CSS) (Bankr. D. Del. Sept. 15, 2013) (D.I. 2016) (extending exclusivity by 180 days);  *In re Exide Technologies*, Case No. 13-11482 (KJC) (Bankr. D. Del. Oct. 15, 2013) (D.I. 880) (granting first

13

of three orders extending the Exclusive Periods); *In re Tribune Company*, Case No. 08-13141)

(Bankr. D. Del. Apr. 23, 2009) (D.I. 1075) (granting first of several orders extending the

Exclusive Periods).

*Factor Eight:  The Debtors Are Not Seeking an Extension of Exclusivity to Pressure Creditors to Submit to the Debtors' Reorganization Demands*

34.     This is the Debtors' first request to extend the Exclusive Periods.  It is

self-evident that the Debtors do not seek these extensions to artificially delay the conclusion of

these chapter 11 cases or to hold the creditors hostage to an unsatisfactory plan proposal.  Indeed,

the Debtors have a chapter 11 plan – the Proposed Plan – that has the support of a majority of

their creditors, but, unfortunately, economic conditions have necessitated that the Debtors must

now pause to consider the ramifications of recent oil and gas prices on the Proposed Plan.

Therefore, this factor supports extensions of the Exclusive Periods.

*Factor Nine:  The Debtors Face Unresolved Questions*

35.     Determining the impact current oil and gas pricing will have on the

Proposed Plan requires the Debtors to engage disparate creditor groups in discussions regarding

potential modification to the Proposed Plan.  That process that will inevitably take time.  Thus,

this factor also weighs in favor of granting the extensions.

## Conclusion

36.     The Debtors' chapter 11 cases are still in their early stages.  The Debtors

are diligently pursuing potential amendments to the Restructuring Support Agreement and

modifications to the Proposed Plan.  The requested extensions of the Exclusive Periods will

allow this process to continue in an orderly, controlled manner, and provide the Debtors with a

fair and reasonable opportunity to negotiate, propose, file, and solicit votes on a chapter 11 plan

that reflects the current economic environment – exactly what section 1121 of the Bankruptcy Code contemplates.

## **Notice**

37.    No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases.  Notice of this Motion shall be given to: (i) the U.S. Trustee, (ii)  Thompson & Knight LLP, One Arts Plaza 1722 Routh Street, Suite 1300, Dallas, TX 75201 (Attn: David Bennett, Esq. and Cassandra Sepanik Shoemaker, Esq.), co-counsel for the Committee, (iii) Bayard P.A., 222 Delaware Ave, Suite 900, Wilmington, DE 19801 (Attn:  Neil B. Glassman, Esq., Scott D. Cousins, Esq. and Evan T. Miller, Esq.), co-counsel for the Committee, (iv) Reed Smith LLP, 225 Fifth Avenue, Suite 1200, Pittsburgh, PA 15222 (Attn: Eric A. Schaffer, Esq.), counsel to Wells Fargo Bank, National Association, in its capacity as trustee under the 12% Notes due March 2018, (v) Arent Fox LLP, 1675 Broadway, New York, NY 10019 (Attn: Andrew I. Silfen, Esq. and Leah M. Eisenberg, Esq.), counsel to Wilmington Trust, National Association, in its capacity as trustee under the 12% Notes due June 2018, (vi) Wilmington Savings Fund Society, FSB, in its capacity as trustee under the 5.5% Convertible Senior Notes due 2016, (vii) Wilmington Savings Fund Society, FSB, in its capacity as trustee under the 6.5% Convertible Senior Notes due 2016, (viii) Delaware Trust Company, in its capacity as successor trustee under the 7.5% Guaranteed Convertible Bonds due 2016, (ix) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Dennis F. Dunne, Esq., Matthew S. Barr, Esq. and Michael E. Comerford, Esq.), counsel to certain of the holders of the 12% Notes due March 2018 and the 12% Notes due June 2018, (x) Brown Rudnick LLP, Seven Times Square, New York, NY 10036 (Attn: Robert J. Stark, Esq.), counsel to certain of the holders of the 5.5% Convertible Senior Notes due 2016 and the 6.5% Convertible Senior Notes due 2016, (xi) Ropes & Gray LLP, 1211 Avenue of the

WEIL:\95214002\5\43794.0004

Americas, New York, NY 10036 (Attn: Keith H. Wofford, Esq.), counsel to the holder of the

7.5% Guaranteed Convertible Bonds due 2016, (xii) Akin Gump Strauss Hauer & Feld LLP, One

Bryant Park, Bank of America Tower, New York, NY 10036 (Attn: Michael Stamer, Esq. and

Meredith Lahaie, Esq.), counsel to certain secured lenders under the EEUK Term Loan,

(xiii) National Association of Attorneys General, 2030 M Street NW, 8th Floor, Washington, DC

20036 (Attn: Karen Cordry, Esq.), (xiv) the Office of the Attorney General in each state in which

the Debtors operate, (xv) the Office of the Delaware Secretary of State, (xvi) the Delaware State

Treasury, (xvii) the Securities and Exchange Commission, (xiii) the Internal Revenue Service

and (xix) all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy

Rule 2002.  The Debtors respectfully submit that no further notice of this Motion is required.

**No Previous Request**

38.   No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:   February 6, 2015
         Wilmington, Delaware

                                    /s/ Zachary I. Shapiro
                                   RICHARDS, LAYTON & FINGER, P.A.

                                   Mark D. Collins (No. 2981)
                                   Zachary I. Shapiro (No. 5103)
                                   One Rodney Square
                                   920 North King Street
                                   Wilmington, Delaware  19801
                                   Telephone:   (302) 651-7700
                                   Facsimile:   (302) 651-7701
                                   Email:       collins@rlf.com
                                   Email:       shapiro@rlf.com

                                   -and-

                                   WEIL, GOTSHAL & MANGES LLP

                                   Gary T. Holtzer
                                   Stephen A. Youngman
                                   767 Fifth Avenue
                                   New York, New York  10153
                                   Telephone:   (212) 310-8000
                                   Facsimile:   (212) 310-8007
                                   Email:       gary.holtzer@weil.com
                                   Email:       stephen.youngman@weil.com

                                   *Attorneys for Debtors and Debtors in Possession*