## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| -------------------------------------------------------------- x | : | |
| *In re:* | : | **Chapter 11** |
| | : | |
| **ENDEAVOUR OPERATING** | : | **Case No. 14–12308 (KJC)** |
| **CORPORATION,** *et al.,*[1] | : | |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |
| | : | Hearing Date:  11/30/15 at 10:00 a.m. (ET) |
| -------------------------------------------------------------- x | | Objection Deadline:  11/20/15 at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR ORDER (A) APPROVING SALE OF CERTAIN OF THE DEBTORS' ASSETS TO LPN ENERGY, LLC FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363(b), (f), AND (m), (B) APPROVING ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN 365 CONTRACTS AND UNEXPIRED LEASES PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365 AND RELATED CURE AMOUNTS, AND (C) GRANTING RELATED RELIEF**

Endeavour Operating Corporation and its above-captioned debtor affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"), respectfully represent:

### Jurisdiction and Venue

1.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Endeavour Operating Corporation (6552); Endeavour International Corporation (8389); Endeavour Colorado Corporation (0067); END Management Company (7578); Endeavour Energy New Ventures Inc. (7563); Endeavour Energy Luxembourg S.à r.l. (2113).  The Debtors' principal offices are located at 811 Main Street, Suite 2100, Houston, Texas 77002.

of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

3. Pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rules 2002-1 and 6004-1 of the Local Rules, the Debtors hereby move the Court for the entry of an order (the "***Sale Order***"), substantially in the form attached hereto as **Exhibit A**, (i) approving the sale of certain of the Debtors' assets to LPN Energy, LLC (the "***Buyer***") free and clear of all liens, claims, encumbrances, and other interests (the "***Sale***"), (ii) approving the assumption, assignment, and sale of certain executory contracts and unexpired leases pursuant to Bankruptcy Code sections 363 and 365 and related cure amounts, and (iii) granting related relief.

**Background**

4. On October 10, 2014 (the "***Petition Date***"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

RLF1 13276356v.1

6.     On December 11, 2014, the United States Trustee for the District of Delaware (the "***U.S. Trustee***") appointed the Official Committee of Unsecured Creditors (the "***Committee***").

## The Debtors' Businesses

7.     The Debtors comprise an oil and gas company engaged in the acquisition, exploration, and development of energy reserves and resources onshore in the United States ("***U.S.***").  Additional information about the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases can be found in the *Declaration of William L. Transier in Support of the Debtors' Chapter 11 Petitions and Request for First Day Relief* (D.I. 12).

## The Debtors' Sale and Wind Down Processes

8.     The Debtors, pursuant to Court-approved bid procedures, held an auction (the "***Auction***") on June 11, 2015 for substantially all of their U.S. oil and gas assets (the "***Assets***").  During the Auction, the Debtors received bids for all of their oil and gas assets located in the state of Colorado (the "***Colorado Assets***"), which they sold to Augustus Energy Partners II, LLC on September 21, 2015.  Additionally, Energy Reserves Group, LLC ("***Energy Reserves Group***") advised the Debtors of its interest in bidding for the Debtors' oil and gas assets located in the Marcellus and Haynesville shale formations (the "***Marcellus and Haynesville Assets***").  During the course of the negotiations over these assets, Energy Reserves Group expressed a willingness to acquire all of the Debtors' additional remaining Assets, comprised of oil and gas leases located in the states of Texas, New Mexico, Montana, and Alabama (the "***Other Oil and Gas Assets***").  The Debtors closed a transaction with Energy Reserves Group for the Haynesville Assets and the Other Oil and Gas Assets on October 23,

3

2015.  The parties, however, were unable to successfully reach a deal regarding the Marcellus Assets.

9.      In addition to the sales of the Assets, on October 16, 2015, the Debtors received approval of the sale of the equity in their U.K. subsidiaries (which owned all of the company's U.K. oil and gas assets) through a credit bid transaction with certain of the holders of the Notes due March 2018 (the "*First Priority Noteholders*") and certain of the lenders under the EEUK Credit Agreement (collectively, the "*Ad Hoc Group*").  This consensual transaction closed on October 21, 2015.

10.      On August 3, 2015, the Debtors filed the *Motion of the Debtors for Entry of an Order Pursuant to Sections 105(a), 305(a), and 1112(b)of the Bankruptcy Code and Bankruptcy Rule 1017 Authorizing Dismissal of the Debtors' Cases Under Certification of Counsel* (the "*Dismissal Motion*") (D.I. 808), seeking authority to dismiss their chapter 11 cases.  On October 16, 2015, the Court entered the *Order Approving (I) Form of Order Pursuant to Sections 105(a), 305(a) and 1112(b) of the Bankruptcy Code and Bankruptcy Rule 1017 Authorizing Dismissal of the Debtors' Cases and (II) Procedures for Submission of Such Order Under Certification of Counsel* (D.I. 987) (the "*Dismissal Authorization Order*"), approving entry of the Debtors' proposed dismissal order (the "*Dismissal Order*") upon certification of counsel after all preconditions to dismissal, as further described in the Dismissal Authorization Order, have been met.

11.      Accordingly, the only significant assets that remain to be disposed of are the Marcellus Assets and associated liabilities.  On September 18, 2015, the Court entered the *Order Approving Debtors' Motion Pursuant to Sections 105(a), 363(b), 363(f), and 554(a) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 and Local Rules 2002-1 and 6004-1*

4

*Approving Procedures to Sell, Transfer, Abandon, or Otherwise Dispose of Certain Remaining Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests Without Further Court Approval* (the "***Remaining Assets Sale Order***"), pursuant to which the Debtors are authorized to sell the Marcellus Assets without approval of the Court, or, in the Debtors' discretion, through a fully noticed motion.  Debtors have already engaged in an extensive marketing process with respect to such assets.  In addition, this Court already approved formal bid and auction procedures with respect to the Assets, including the Marcellus Assets, and, pursuant to those procedures, the Auction was held and no party submitted a bid.  As a result, the Debtors submit that establishing additional bid procedures and running a formal auction process is unlikely to result in additional bids and will result in the incurrence of additional administrative expenses without any resulting benefit.  Accordingly, the Debtors have determined, in the exercise of their business judgment, that consummating a private sale of the Marcellus Assets to the Buyer is in the best interest of the Debtors and their estates and creditors.

## The Proposed Asset Purchase Agreement

12.     The Debtors have prepared an asset purchase agreement (the "***Asset Purchase Agreement***," attached to the Sale Order as **Exhibit 1**) reflecting the terms upon which the Buyer will purchase the Marcellus Assets and assume certain related liabilities.  In accordance with Local Rule 6004-1, certain terms of the Asset Purchase Agreement are detailed below:

a)      Buyer: The Buyer is not an insider (as defined in section 101(31) of the Bankruptcy Code) of any of the Debtors.

b)      Assets.  The Marcellus Assets are generally described in Section 2.01 of the Asset Purchase Agreement (referred to therein as the "***Properties***") and include, among other things, certain oil and gas interests, wells, equipment, hydrocarbons, surface rights, information, data, contracts, permits, payment rights, and intangible rights.

5

c)    <u>Consideration</u>.  The Buyer shall pay or deliver in accordance with the Asset Purchase Agreement $100,000 payable in cash and assume all Assumed Liabilities (as defined in the Asset Purchase Agreement).

d)    <u>Private Sale/No Competitive Bidding</u>.  As set forth herein in greater detail, the Debtors submit that the terms memorialized in the Asset Purchase Agreement constitute the highest and otherwise best offer for the Marcellus Assets.  The Debtors do not believe that further marketing or conducting a further auction with respect to such assets would procure a higher or better offer.  Accordingly, the Debtors intend to sell the Marcellus Assets without conducting an auction.

e)     <u>Closing and Other Deadlines</u>.  Section 2.05 of the Asset Purchase Agreement provides that the closing of the Sale shall take place as soon as possible, but in no event later than the first Business Day after satisfaction or waiver by the requisite parties of the conditions to closing set forth in Article VIII of the Asset Purchase Agreement (other than those conditions that by their nature cannot be satisfied until the time of Closing, but subject to the satisfaction or waiver of those conditions), or at such other time or place as Buyer and the Debtors may agree in writing.

f)    <u>Record Retention</u>.  The Asset Purchase Agreement provides that Buyer shall preserve all books and records relating to the Debtors or any of their businesses or operations for any and all periods prior to or including the Closing Date (as defined in the Asset Purchase Agreement) for a period of three (3) years after the Closing Date; *provided*, *however* that Buyer shall have the right at any time after the second anniversary of the Closing Date to request in writing that the Debtors take any such records and, if the Debtors do not agree to take such records within ninety (90) Business Days after receipt of the request, Buyer (or its Subsidiaries, as applicable) may dispose of such records.

g)    <u>Successor Liability</u>.  The Debtors are also seeking a finding that the Buyer and its affiliates (i) are not, and shall not be, considered a successor in interest to the Debtors, (ii) have not, de facto or otherwise, merged with or into the Debtors, (iii) are not a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, and (iv) are not holding themselves out to the public as a continuation of the Debtors.  Except as otherwise specifically provided in the Asset Purchase Agreement, the transfer of the Marcellus Assets to the Buyer does not and will not subject the Buyer or any of their affiliates to any Liability (as defined in the Asset Purchase Agreement) whatsoever with respect to the operation of the Debtors' businesses before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation,

6

any theory of antitrust, successor, or transferee liability.  *See* Sale Order ¶ ¶ R, 24.

h)    <u>Sale Free and Clear of Unexpired Liens</u>.  The Asset Purchase Agreement and Sale Order provide that the Buyer shall purchase the Marcellus Assets free and clear of all liens, claims, encumbrances, and other interests to the extent permitted under Sections 363 and 365 of the Bankruptcy Code.

i)    <u>Relief from Bankruptcy Rule 6004(h)</u>.  As set forth below in greater detail, the Debtors seek a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h).

### **Assumption and Assignment**

13.    In accordance with the terms of the Asset Purchase Agreement, the Debtors seek to assume and assign to the Buyer certain of the Debtors' remaining executory contracts and unexpired leases (together, the "***365 Contracts***").  Attached to the Sale Order as **<u>Exhibit 2</u>** is a list of 365 Contracts of the Debtors related to the Marcellus Assets that the Debtors and the Buyer believe may be assumed and assigned in connection with the sale (the "***Desired 365 Contracts***").[2]  With the exception of the amounts necessary to cure all monetary defaults (the "***Cure Costs***") described in **<u>Exhibit 2</u>** and in Section 3.07 of the Asset Purchase Agreement, there are no Cure Costs for any of the Desired 365 Contracts.

14.    Any objections to the assumption and/or assignment of any Desired 365 Contract, including the proposed Cure Costs (if any), must be in writing, filed with the Court, and actually received by (i) the Debtors, c/o Endeavour Operating Corporation, 811 Main Street, Suite 2100, Houston, TX 77002 (Attn: Catherine Stubbs and David Baggett); (ii) counsel to the Debtors, Weil, Gotshal & Manges LLP,  767 Fifth Avenue, New York, NY 10153 (Attn: Gary T. Holtzer, Esq. and Stephen A. Youngman, Esq.), and Richards, Layton & Finger, P.A., One

---

[2] The Debtors reserve the right, consistent with the terms of the Asset Purchase Agreement, to remove any 365 Contract from **<u>Exhibit 2</u>** and to add any subsequently identified 365 Contracts to **<u>Exhibit 2</u>** until the Closing of the Sale.  Accordingly, the inclusion of a 365 Contract on **<u>Exhibit 2</u>** at this time does not mean that such 365 Contract will be assumed or assigned in connection with the Sale or that the Debtors or Buyer will make any cure payment in connection with such 365 Contract.

Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins, Esq. and

Zachary I. Shapiro, Esq.); and (iii) the Notice Parties, as defined herein (together, the "***Objection***

***Recipients***"), no later than November 20, 2015 at 4:00 p.m. (the "***Objection Deadline***").  If no

objections are received by the Objection Deadline, then the proposed assumption and assignment

is authorized and the Cure Amounts set forth in the Notice of Assumption and Assignment will

be binding upon the contract counterparty for all purposes and will constitute a final

determination of the total Cure Costs to be paid to the counterparty in connection with the

assumption and assignment to Buyer.

   15. Any party that does not timely file an objection by the Objection Deadline

will be forever barred from asserting any objection with regard to the assumption, assignment,

sale, and/or Cure Costs set forth in Exhibit 2.  The Cure Costs set forth in Exhibit 2 will be

controlling, notwithstanding anything to the contrary in any 365 Contract or any other document,

and the counterparty to the 365 Contract will be deemed to have consented to the Cure Costs and

will be forever barred from asserting any other claims related to such 365 Contract against the

Debtors or the Buyer, or the property of any of them.

   16. If a timely objection is received and such objection cannot otherwise be

consensually resolved by the parties, such objection will be heard at the hearing on this Motion,

which is scheduled for **November 30, 2015** at **10:00 a.m. (Prevailing Eastern Time)** (the "***Sale***

***Hearing***").

   17. If any party asserts that any property or right cannot be transferred, sold,

assumed, and/or assigned free and clear of all liens, claims, encumbrances, and other interests

under the Asset Purchase Agreement and section 363 or 365 of the Bankruptcy Code on account

of one or more alleged approval rights, consent rights, preferential purchase rights, rights of

purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights, then such party shall file and serve a notice with all supporting documentation (a "***Rights Notice***") so that the Rights Notice is actually received by the Objection Recipients on or before the Objection Deadline.  Each Rights Notice must identify the properties or rights that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right, and identify the portion of the agreement, document, or statute giving rise to such right.  The assertion of a Rights Notice shall not require an exercise of the underlying right asserted and any such right asserted shall be subject to the terms and conditions of the Asset Purchase Agreement.

18.    Any party failing to timely file and serve a Rights Notice shall be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title and interest in, to and under the properties of the Debtors to be sold, assumed and/or assigned pursuant to the Asset Purchase Agreement and from asserting any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights with respect to the Debtors' transfer, sale, assumption, and/or assignment of the Debtors' right, title and interest in, to and under such properties, as set forth in the Asset Purchase Agreement and (ii) deemed to consent to and approve of the transfer, sale, assumption, and/or assignment of such right, title and interest in, to and under such properties, free and clear of all liens, claims, encumbrances, and other interests in accordance with the Asset Purchase Agreement (regardless of whether such consent must be in writing).

19.    If a party timely files and serves a Rights Notice with respect to any asserted preferential purchase right, right of first offer, or right of first refusal, but the objection

9

is not resolved at or before the closing of the Sale, the Assets to which that party has alleged a

right may, at the option of the Buyer, be excluded from the Properties (as defined in the Asset

Purchase Agreement), and the purchase price shall be reduced in accordance with the Asset

Purchase Agreement.

**Legal Basis for Relief Requested**

**A.  Approval of the Sale is Warranted Under Section 363 of the Bankruptcy Code**

20.     Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he

trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of

business, property of the estate."  11 U.S.C. § 363(b)(1).  This Court has held that such a sale

may be authorized under section 363 of the Bankruptcy Code if the Court finds a "sound

business purpose" for the sale.  *See Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding

Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147 (Bankr. D. Del. 1999) (citing

*Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d

Cir. 1983)).  Once a court is satisfied that there is a sound business reason justifying the sale, the

court must also determine that adequate and reasonable notice has been provided to interested

parties, that the sale price is fair and reasonable, and that the purchaser is proceeding in good

faith.  *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (citation omitted).

21.     The Debtors have shown that a valid business justification exists to sell the

Marcellus Assets through a private sale to the Buyer.  The Sale is in the best interests of the

Debtors and their creditors because another formal auction process is unlikely to result in bids

for the Marcellus Assets and will result in additional administrative expenses with no benefit.

Additionally, the Sale will contribute to a quick and orderly wind down of the Debtors'

businesses before the dismissal of these chapter 11 cases.  Moreover, the Debtors are providing

parties with 21 days' notice of the Sale, as required under Bankruptcy Rule 2002. Finally, the Buyer has negotiated with the Debtors in good faith to reach the purchase price of $100,000, which is a fair and reasonable sale price under the circumstances. Accordingly, the Debtors request that the Court approve the Sale.

**B. The Proposed Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code for a Free and Clear Sale**

22.    Under section 363(f) of the Bankruptcy Code, a debtor may sell estate property free and clear of liens, claims, encumbrances, and other interests if one of the following conditions is satisfied:

(i)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(ii)    such entity consents;

(iii)   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(iv)    such interest is in bona fide dispute; or

(v)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because section 363(f) of the Bankruptcy Code is written in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Marcellus Assets "free and clear" of liens, claims, encumbrances, and other interests. *See, e.g.*, *In re Dura Automotive Sys., Inc.*, 2007 WL 7728109 n.32 (Bankr. D. Del. Aug. 15, 2007).

23.    Furthermore, section 105(a) of the Bankruptcy Code grants the Court broad discretionary powers, providing that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). This equitable power may be utilized to effectuate the provisions of section

11

363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, 2001 WL 1820325 (highlighting bankruptcy courts' equitable authority to authorize sale of estate assets free and clear).

24.      The Sale will satisfy one or more of the requirements of Section 363(f). Accordingly, the Debtors request authorization to sell the Marcellus Assets free and clear of all liens, claims, encumbrances, and other interests (including, without limitation, any lien, claim, encumbrance, or other interest arising under that certain Settlement Agreement dated as of December 1, 2013, by and between Donna Lee McConaghay, Steven M. Bradshaw, and Endeavour Operating Corporation).

**C.    Auction of the Marcellus Assets is Not Required**

25.      Pursuant to the Remaining Assets Sale Order, the Debtors are authorized to sell the Marcellus Assets without approval of the Court, or, in the Debtors' discretion, through a fully noticed motion.  Bankruptcy Rule 6004(f)(1) permits private sales or sales conducted without an auction.  Furthermore, as long as a debtor maximizes the return to its estate, a court should defer to a debtor's business judgment regarding how to structure an asset sale.  *In re Bakalis*, 220 B.R. 525, 532 (recognizing that although a trustee's business judgment enjoys great judicial deference, a duty is imposed on the trustee to maximize the value obtained from a sale). Accordingly, if the Debtors conclude that conducting a private sale is in the best interests of their estates, the Debtors should be permitted to do so.  *See Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect to sales of estate property, "[t]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction.").

26.      The Debtors previously marketed the Marcellus Assets for sale at the Auction with limited success.  The time, effort, and expense associated with marketing the

Marcellus Assets for sale at a public auction would needlessly duplicate these previous efforts and would likely exceed the value of any benefits provided.  Accordingly, the Debtors' decision to sell the Marcellus Assets to the Buyer pursuant to the Asset Purchase Agreement is supported by the Debtors' business judgment and should be approved.

**D. Assumption, Assignment, and Sale of 365 Contracts and Unexpired Leases Should be Authorized**

27.    Under Section 365(a) of the Bankruptcy Code, a debtor in possession may, subject to the court's approval, assume or reject any executory contract or unexpired lease of a debtor.  11 U.S.C. § 365(a).  The standard governing the Court's approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's business judgment supports assumption or rejection, which "requires only that the trustee [or debtor-in-possession] demonstrate that [assumption or] rejection of the contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting *In re Stable Mews Assocs.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984)).  Moreover, pursuant to section 365(b) of the Bankruptcy Code, for a debtor to assume an executory contract, it must "cure, or provide adequate assurance that the debtor will promptly cure," any default, including compensation for "actual pecuniary loss" relating to such default.  11 U.S.C. 365(b)(1).

28.    Once an executory contract is assumed, the debtor may elect to assign such contract.  *See In re Rickel Home Center, Inc*., 209 F.3d 291, 299 (3d Cir. 2000) ("The Code generally favors free assignability as a means to maximize the value of the debtor's estate."). Section 365(f) of the Bankruptcy Code provides that the "trustee may assign an executory contract . . . only if the trustee assumes such contract . . . and adequate assurance of future performance is provided." 11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future

13

performance" depends on the facts and circumstances of each case, but should be given a

"practical, pragmatic construction." *In re DBSI, Inc*., 405 B.R. 698, 708 (Bankr. D. Del. 2009).

29.    The assumption and assignment of the contracts related to the Marcellus

Assets will benefit the estate because such assumption and assignment is an integral component

of the Asset Purchase Agreement and is necessary to successfully complete the Sale.

Additionally, the Buyer has agreed under the Asset Purchase Agreement to provide adequate

assurance of future performance at the closing and, to the extent necessary, will demonstrate as

much at the Sale Hearing.  The assumption and assignment of the Debtors' executory contracts

should thus be approved.

### E.   Relief from Bankruptcy Rules 6004(h) and 6006(d) is Appropriate

30.    Under Bankruptcy Rule 6004(h), unless the court orders otherwise, all

orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are

automatically stayed for fourteen days after entry of the order.  Fed. R. Bankr. P. 6004(h).  The

purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal

before the order is implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

Similarly, Bankruptcy Rule 6006(d) stays all orders authorizing a debtor to assign an executory

contract or unexpired lease pursuant to section 365(f) of the Bankruptcy Code for fourteen days,

unless the court orders otherwise.

31.    To accomplish the dismissal of these cases, it is critical that the Debtors

close the sale of the Marcellus Assets as soon as possible after all closing conditions have been

met or waived.  Accordingly, the Debtors hereby request that the Court waive the fourteen-day

stay periods under Bankruptcy Rules 6004(h) and 6006(d).

RLF1 13276356v.1

## **Notice**

32.    No trustee or examiner has been appointed in these chapter 11 cases.

Notice of this Motion shall be given to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Committee, Thompson & Knight LLP, One Arts Plaza, 1722 Routh Street, Suite 1300, Dallas, TX 75201 (Attn: David M. Bennett, Esq. and Cassandra Sepanik Shoemaker, Esq.) and Bayard, P.A., 222 Delaware Avenue, Suite 900, Wilmington, DE 19801 (Attn: Neil B. Glassman, Esq., Scott D. Cousins, Esq., and Evan T. Miller, Esq.); (iii) counsel to the Ad Hoc Group, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, NY 10036 (Attn: Michael Stamer, Esq. and Meredith Lahaie, Esq.); (iv) counsel to the First Priority Noteholders, Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, NY 10005 (Attn: Dennis F. Dunne, Esq. and Michael E. Comerford, Esq.); (v) counsel to certain of the holders of the 5.5% Convertible Senior Notes due 2016 and the 6.5% Convertible Senior Notes due 2016, Brown Rudnick LLP, Seven Times Square, New York, NY 10036 (Attn: Robert J. Stark, Esq.); (vi) counsel to the holder of the 7.5% Guaranteed Convertible Bonds due 2016, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036 (Attn: Keith H. Wofford, Esq.); (vii) all Persons known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to the Marcellus Assets since the Petition Date; (viii) all counterparties to the Debtors' Desired 365 Contracts; (ix) all entities known by the Debtors to have asserted any lien, claim, encumbrance, or other interest in the Marcellus Assets (for whom identifying information and addresses are available to the Debtors); (x) any Governmental Authority (as defined in the Asset Purchase Agreement) known to have a claim in the bankruptcy cases; (xi) National Association of Attorneys General, 2030 M Street NW, 8th Floor, Washington, DC 20036 (Attn: Karen Cordry, Esq.); (xii) the Office of the Attorney General in each state in which the Debtors operate;

RLF1 13276356v.1

(xiii) the Office of the Delaware Secretary of State; (xiv) the Delaware State Treasury, (xv) the Securities and Exchange Commission; (xvi) the Internal Revenue Service; and (xvii) all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002 (collectively, the "***Notice Parties***").  The Debtors respectfully submit that no further notice of this Motion is required.

**No Previous Request**

33.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:    November 6, 2015
          Wilmington, Delaware

              */s/ Rachel L. Biblo*
          RICHARDS, LAYTON & FINGER, P.A.

          Mark D. Collins (No. 2981)
          Zachary I. Shapiro (No. 5103)
          Rachel L. Biblo (No. 6012)
          One Rodney Square
          920 North King Street
          Wilmington, Delaware  19801
          Telephone:    (302) 651-7700
          Facsimile:    (302) 651-7701
          Email:        collins@rlf.com
          Email:        shapiro@rlf.com
          Email:         biblo@rlf.com

          -and-

          WEIL, GOTSHAL & MANGES LLP

          Gary T. Holtzer (admitted *pro hac vice*)
          Stephen A. Youngman (admitted *pro hac vice*)
          767 Fifth Avenue
          New York, New York  10153
          Telephone:    (212) 310-8000
          Facsimile:    (212) 310-8007
          Email:        gary.holtzer@weil.com
          Email:        stephen.youngman@weil.com

          *Attorneys for Debtors and Debtors in Possession*

17