IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
                                                           :
*In re:*                                                   :     **Chapter 11**
                                                           :
**ENDEAVOUR OPERATING**                                    :     **Case No. 14–12308 (KJC)**
**CORPORATION, et al.,**[1]                                :
                                                           :     **(Jointly Administered)**
         **Debtors.**                                      :
                                                           :     RE: D.I. 1029 & *1081*
---------------------------------------------------------- x

**ORDER (A) APPROVING SALE OF CERTAIN OF THE DEBTORS' ASSETS TO LPN
ENERGY, LLC FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES
AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105
AND 363(b), (f), AND (m), (B) APPROVING ASSUMPTION, ASSIGNMENT, AND SALE
OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES
PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365
AND RELATED CURE AMOUNTS, AND (C) GRANTING RELATED RELIEF**

Upon the Motion, dated November 6, 2015 (the "***Motion***")[2] of Endeavour Operating

Corporation and its above-captioned debtor affiliates, as debtors and debtors in possession

(collectively, the "***Debtors***") for an order pursuant to sections 105, 363, and 365 of title 11 of the

United States Code (the "***Bankruptcy Code***"), Rules 2002, 6004, and 6006 of the Federal Rules

of Bankruptcy Practice and Procedure (the "***Bankruptcy Rules***"), and Rules 2002-1 and 6004-1

of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court

for the District of Delaware (the "***Local Rules***") (i) approving (a) the sale of the Properties, as

defined in that certain Asset Purchase Agreement dated as of November 6, 2015 (as amended,

supplemented, or otherwise modified from time to time, including all Exhibits, Schedules, and

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are
as follows: Endeavour Operating Corporation (6552); Endeavour International Corporation (8389); Endeavour
Colorado Corporation (0067); END Management Company (7578); Endeavour Energy New Ventures Inc. (7563);
Endeavour Energy Luxembourg S.à r.l. (2113). The Debtors' principal offices are located at 811 Main Street, Suite
2100, Houston, Texas 77002.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Asset Purchase
Agreement (as defined herein).

Appendices thereto (the "*Asset Purchase Agreement*," attached hereto as **Exhibit 1**), to LPN

Energy, LLC (the "*Buyer*") free and clear of all liens, claims, encumbrances, and other interests

pursuant to sections 105 and 363(b), (f), and (m) of the Bankruptcy Code, (b) approving

assumption, assignment, and sale of certain executory contracts and unexpired leases pursuant to

sections 363 and 365 of the Bankruptcy Code and related cure amounts, and (c) granting related

relief; and the Court having reviewed and considered the Motion and the objections and

responsive pleadings filed in connection with the Motion, if any; and after due deliberation and

sufficient cause appearing therefor, hereby finds and determines that:

A.      **Jurisdiction and Venue.** The Court has jurisdiction to consider the Motion and

the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

*Order of Reference* from the United States District Court for the District of Delaware, dated as of

February 29, 2012, the consideration of the Motion and the relief requested therein is a core

proceeding pursuant to 28 U.S.C. § 157(b), and venue is proper under 28 U.S.C. §§ 1408 and

1409.

B.      **Final Order.** This Order constitutes a final order within the meaning of

28 U.S.C. § 158(a).

C.      **Statutory Predicates.** The statutory predicates for the relief sought in the Motion

are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and

6006, and Local Rules 2002-1 and 6004-1.

D.      **Notice.** Proper, timely, and adequate notice ("*Notice*") of the Motion, the

executory contracts and unexpired leases which may be assumed or assigned in connection with

the sale of the Properties, and the Sale Hearing was provided to all necessary persons and

entities. The Notice was provided by first-class mail to the Notice Parties no less than twenty-

one (21) days before the Sale Hearing, contained sufficient disclosure of the terms and conditions of the Sale and the matters raised in the Motion, and provided reasonable, due, and adequate process under the law.   The Notice informed all interested parties that any party who does not make a timely objection to the Motion may not have their objection considered by the Court, and the Court may grant the relief requested in the Motion without further hearing and notice.  The Notice was good, sufficient, and appropriate under the particular circumstances, and no other or further notice of the Motion or Sale Hearing is required.

E.    **Corporate Authority.** The Debtors have taken all corporate or other entity action necessary to authorize and approve the Asset Purchase Agreement and the consummation of the Sale, and the Sale has been duly and validly authorized by all necessary corporate or other entity action.  The Debtors have full corporate or other entity power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby and to consummate the Sale.  No consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Debtors to consummate the Sale.

F.    **Business Justification.** Approval of the Asset Purchase Agreement and consummation of the Sale is in the best interests of the Debtors, the estates, creditors, and other parties in interest.  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the sale to the Buyer pursuant to section 363(b) of the Bankruptcy Code. Such business purposes and justifications include, but are not limited to, that in the Debtors' business judgment, a private sale to the Buyer represents the highest and otherwise best offer they will receive for the Marcellus Assets in light of the absence of bids at the Auction for these assets and the necessity of dismissing these chapter 11 cases as quickly as possible.

3

G.    The consideration to be provided by the Buyer pursuant to the Asset Purchase Agreement: (i) is fair and reasonable; (ii) is supported by the Debtors' sound business judgment; (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration. Entry of an order approving the Motion, Asset Purchase Agreement and the Sale is a necessary condition precedent to the consummation of the sale.

H.    **Arm's-Length Sale.** The Asset Purchase Agreement was negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and was the result of arm's-length bargaining between the parties represented by independent counsel. The Debtors and the Buyer have not engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code. The Buyer is not an "insider" or "Affiliate" of any of the Debtors, as such terms are defined in the Bankruptcy Code.

I.    **Good Faith Purchaser.** The Buyer is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Buyer is acting in good faith within the meaning of section 363(m) in consummating the Sale. The Buyer has proceeded in good faith in all respects in that, *inter alia*: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Properties; (ii) no common identity of directors or officers exists among the Buyer and the Debtors, and (iii) all payments to be made by the Buyer and all other material agreements or arrangements entered into by the Buyer and the Debtors in connection with the Sale have been disclosed.

J.    **Legal, Valid and Binding Transfer.** The Debtors are the sole and lawful owners of the Properties, or otherwise have a valid, enforceable property interest in such, and title

4

thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The Debtors have all right, title, and interest in the Properties required to transfer and convey the Properties to the Buyer. The transfer of the Properties to the Buyer will be a legal, valid, and effective transfer of the Properties and, except as provided in the Asset Purchase Agreement, will vest the Buyer with all right, title, and interest of the Debtors to the Properties free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (including liens, claims, encumbrances, and other interests of any Governmental Authority, as defined in Exhibit A to the Asset Purchase Agreement) other than those liens, claims, encumbrances, and other interests specifically assumed by the Buyer pursuant to the Asset Purchase Agreement. The sale of the Properties shall also be free and clear of those liens, claims, encumbrances, and other interests that purport to give to any party a right or option to effectuate any forfeiture, modification, or termination of the Debtors' interests in the Properties, or any similar rights.

K.     The Asset Purchase Agreement is a valid and binding contract between the Debtors and the Buyer, which is and shall be enforceable according to its terms.

L.     **Free and Clear.** The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale, thus adversely affecting the Debtors, their estates, and their creditors, if the transfer of the Properties to the Buyer and the assumption and assignment of the Desired 365 Contracts under the Asset Purchase Agreement to the Buyer was not free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, except for the Assumed Liabilities, or if the Buyer would, or in the future could, be liable for any such lien, claim, encumbrance, or other interest. A sale of the Properties other than one free and clear of any liens, claims, encumbrances, and other interests, except for the

5

Assumed Liabilities, would adversely impact the Debtors' estates and would yield substantially less value for the Debtors' estates.

      M.     Subject to the provisions of this Order and except as may be specifically provided in the Asset Purchase Agreement, the Debtors may sell the Properties free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, except for the Assumed Liabilities, because, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code have been satisfied. Each entity with a lien, claim, encumbrance, or other interest in the Properties to be transferred on the Closing Date (as defined in Exhibit A to the Asset Purchase Agreement): (i) has, subject to the terms and conditions of this Order, consented to the Sale or is deemed to have consented; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien, claim, encumbrance, or other interest (including, without limitation, any lien, claim, encumbrance, or other interest arising under that certain Settlement Agreement dated as of December 1, 2013, by and between Donna Lee McConaghay, Steven M. Bradshaw, and Endeavour Operating Corporation); or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of liens, claims, encumbrances, and other interests who did not object to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

      N.     For the avoidance of doubt, with respect to that certain lease dated November 27, 2002 with Leif R. Logue for lands in Clarion County Pennsylvania (reference number PA0173.000), this Order does not modify paragraphs 1 through 22 of that lease. Such provisions remain in force to the extent available under applicable non-bankruptcy law.

      O.     **Not a *Sub Rosa* Plan.** The Asset Purchase Agreement and Sale do not constitute an impermissible *sub rosa* chapter 11 plan for which approval has been sought without the

6

protections that a disclosure statement would afford. The Asset Purchase Agreement and the Sale neither impermissibly restructure the rights of Debtors' creditors nor impermissibly dictate the terms of a plan for the Debtors.

P.      **No Fraudulent Transfer.** The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States or any state, territory, or possession thereof, or the District of Columbia. The Debtors and the Buyer are not entering into the Sale fraudulently.

Q.      **Assumption and Assignment of 365 Contracts and Unexpired Leases.** Notice of the Debtors' assumption and assignment and sale to the Buyer of the Desired 365 Contracts has been provided to all counterparties to a Desired 365 Contract, together with a statement therein from the Debtors (i) with respect to the Cure Costs, and (ii) to otherwise comply with the requirements of section 365(b) of the Bankruptcy Code with respect to the Desired 365 Contracts. As to each Desired 365 Contract, payment of the Cure Costs, as set forth on **Exhibit 2** hereto, is sufficient for the Debtors to comply fully with the requirements of section 365(b) of the Bankruptcy Code and the Buyer has demonstrated adequate assurance of future performance.

R.      Notwithstanding anything to the contrary herein or in the Asset Purchase Agreement, (i) that certain oil and gas lease dated September 2, 2000 by and between James R. Jones, Donna Lee McConaghay, and Allegheny Enterprises, Inc., (ii) that certain oil and gas lease dated December 17, 2013 by and between Steven M. Bradshaw, Donna Lee McConaghay, and Endeavour Operating Corporation , and (iii) that certain overriding royalty interest granted by Steven M. Bradshaw and Donna Lee McConaghay to Endeavour Operating Corporation as of December 17, 2013, shall not be assigned or sold to the Buyer.

7

S.      The Debtors shall have no further Liability or obligation under the Desired 365 Contracts.

T.      The assumption and assignment of the Desired 365 Contracts pursuant to the terms of this Order is integral to the Asset Purchase Agreement and is in the best interests of the Debtors and their estates, creditors, and other parties in interest, and represents a reasonable exercise of sound and prudent business judgment by the Debtors.

U.      In addition, the Buyer has provided adequate assurance of its ability to perform its obligations under each of the Desired 365 Contracts within the meaning of section 365(f) of the Bankruptcy Code.  All other requirements and conditions under the Bankruptcy Code for the assumption by the Debtors and assignment and sale to the Buyer of the Desired 365 Contracts have been satisfied.  Therefore, the Desired 365 Contracts may be assumed by the Debtors and assigned to Buyer as a Purchased Contract (as defined in Section 2.01 of the Asset Purchase Agreement).

V.      **No Successor Liability.**  The Purchaser and its affiliates (i) are not, and shall not be, considered a successor in interest to the Debtors, (ii) have not, *de facto* or otherwise, merged with or into the Debtors, (iii) are not a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, and (iv) are not holding themselves out to the public as a continuation of the Debtors.  Except as otherwise specifically provided in the Asset Purchase Agreement, the transfer of the Properties to the Buyer does not and will not subject the Buyer or any of its affiliates to any Liability (as defined in the Asset Purchase Agreement) whatsoever with respect to the operation of the Debtors' businesses before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the

District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of antitrust, successor, or transferee liability.

     W.    **Prompt Consummation.**  The Sale must be approved and consummated promptly to effectuate the dismissal of the Debtors' chapter 11 cases by November 30, 2015 or as is soon as is practicable thereafter.  Time is of the essence in consummating the Sale.

     X.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transaction contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Desired 365 Contracts outside of a chapter 11 plan.

     Y.    **Good and Sufficient Cause.**  There is other good and sufficient cause to grant the relief requested in the Motion and approve the Asset Purchase Agreement and the Sale.

     Z.    **Fair and Reasonable**.  Based upon a review of the record, the Court finds that the Asset Purchase Agreement is prudent, reasonable, fair and equitable, in the best interests of the Debtors' estates, and reflects the sound and reasonable exercise of business judgment by the Debtors.

     AA.    **Legal and Factual Bases.**  The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such. The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

*General Provisions*

1.        The notice of the Motion and Sale Hearing and notice of the assumption and

assignment of the Desired 365 Contracts (and related Cure Costs) are approved as being fair,

reasonable, and adequate under the circumstances, and any additional notice as may otherwise be

required under state and federal law is hereby deemed satisfied.

2.        The Motion is **GRANTED** to the extent set forth herein.

3.        All objections to the relief requested in the Motion or the entry of this Order, if

any, that have not been withdrawn, waived, or settled as announced to the Court at the Sale

Hearing or in the Certification of Counsel filed with the Court are denied and overruled in their

entirety on the merits, with prejudice.

*Approval of Free and Clear Sale of the Properties*

4.        The Asset Purchase Agreement, all exhibits and schedules thereto, and all of the

terms and conditions thereof are hereby approved.  The Debtors shall file final versions of the

Asset Purchase Agreement and all other ancillary documents with the Court upon closing the Sale.

5.        Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are

authorized to (i) execute, deliver, perform under, consummate, and implement the Asset Purchase

Agreement and the Sale together with all additional instruments and documents that are requested

by the Buyer and may be reasonably necessary or desirable to implement the Asset Purchase

Agreement and the Sale and (ii) take any and all actions as they deem necessary, appropriate, or

advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the

Buyer, or reducing to possession the Properties and assuming and assigning the Desired 365

Contracts and rights thereunder, or as may be necessary or appropriate to the performance of the

obligations as contemplated by the Asset Purchase Agreement and the Sale, including, without

limitation, any and all actions reasonably requested by the Buyer which are consistent with the Asset Purchase Agreement and the Sale.

6.      Pursuant to sections 105(a), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing: (i) the transfer of the Properties to the Buyer pursuant to the Asset Purchase Agreement shall constitute a legal, valid, and effective transfer of the Properties and shall vest the Buyer with all right, title, and interest in and to the Properties; (ii) the Properties shall be transferred to the Buyer free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (including, but not limited to, any liens, claims, encumbrances, and other interests of any Governmental Authority, any claims or assertions based on any theory of successor or transferee Liability, and any restriction on the use, transfer, receipt of income, or other exercise of any attributes of ownership of the Properties) other than the Assumed Liabilities, including those liens, claims, encumbrances, and other interests specifically assumed by the Buyer pursuant to the Asset Purchase Agreement; and (iii) all Persons are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, against Buyer and its Affiliates with respect to any such liens, claims, encumbrances, and other interests (including, but not limited to, any liens, claims, encumbrances, and other interests of any Governmental Authority (as defined in Exhibit A to the Asset Purchase Agreement), any claims or assertions based on any theory of successor or transferee Liability, and any restriction on the use, transfer, receipt of income, or other exercise of any attributes of ownership of the Properties).

7.      All liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale with the same nature, validity, and priority as such liens, claims, encumbrances, or other interests encumbered the Properties prior to the proposed sale and shall be distributed pursuant to the *Order Pursuant to Sections 105(a) and 363(b), (f), (k) and (m) of the Bankruptcy Code and*

11

*Bankruptcy Rules 2002, 6004, and 9019 Approving Credit Bid Asset Purchase Agreement Among the Debtors, First Priority Notes Collateral Agent, and the Credit Bid Noteholders, the Settlement Agreement Between and Among the Debtors, First Priority Noteholders, and Ad Hoc Group of EEUK Term Loan Lenders, Release of Any Claims Against EEUK Term Loan Lenders, and Modification of Debtors Services Agreements* (D.I. 958).

8.    On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interests in the Properties or a bill of sale transferring good and marketable title in the Properties.

9.    Pursuant to the Asset Purchase Agreement and this Order, the transfer and assignment of the Properties shall be effectuated on the terms set forth therein and herein, and shall not be restricted or prohibited, notwithstanding any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, or similar rights with respect to the Debtors' transfer, sale, vesting, assumption, and/or assignment of the Properties.  All parties who failed to timely file and serve a Rights Notice (as defined in the Motion) are deemed to consent to and approve of the transfer, sale, assumption and/or assignment of the Properties.

10.    This Order is and shall be effective as a determination that all liens, claims, encumbrances, and other interests (other than the Assumed Liabilities and as may otherwise be set forth in the Asset Purchase Agreement) shall be and are, without further action by any Person, unconditionally released, discharged, and terminated with respect to the Properties as of the Closing Date.

11.    Except as otherwise provided herein or in the Asset Purchase Agreement, on the Closing Date, the Debtors' creditors are authorized and directed to execute such documents and

12

instruments and to take all other actions as may be reasonably necessary to document and effectuate the release of their liens, claims, encumbrances, and other interests in the Properties, if any, as such liens, claims, encumbrances, and other interests may have been recorded or may otherwise exist. If any such creditor fails to execute any such documents or instruments or take any such actions, the Buyer is authorized to execute such documents and instruments and to take such actions on behalf of the creditor so as to document the release of such liens, claims, encumbrances, and other interests.

12.     Upon the Closing, and except as otherwise expressly provided in the Asset Purchase Agreement with respect to Assumed Liabilities, the Buyer shall not be liable for any claims against, and Liabilities of, the Debtors or any of the Debtors' predecessors or Affiliates.

13.     The Buyer has given substantial consideration under the Asset Purchase Agreement to the Debtors' estates. The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential claims of successor or transferee Liability of the Buyer, which releases shall be deemed to have been given in favor of the Buyer by all holders of liens, claims, encumbrances, and other interests against the Debtors or the Properties.

*Assumption and Assignment of Desired 365 Contracts*

14.     Pursuant to section 365 of the Bankruptcy Code, the Debtors are authorized to assume the Desired 365 Contracts designated in Schedule 5.02 to the Asset Purchase Agreement, the Buyer is authorized to pay all Cure Costs with respect to the Desired 365 Contracts (pursuant to the Cure Costs set forth on **Exhibit 2** hereto, as also set forth in the Asset Purchase Agreement), and the Debtors are authorized to assign and sell the Desired 365 Contracts as Purchased Contracts to the Buyer.

15.     The Desired 365 Contracts, consistent with the provisions contained herein, shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance

13

with their respective terms, notwithstanding any provision in any such Desired 365 Contract (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, following the Buyer's payment of the Cure Costs, the Debtors shall be relieved from any further Liability with respect to the Desired 365 Contracts after such assignment and sale to the Buyer.

16.     All defaults or other obligations of the Debtors under the Desired 365 Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured, upon payment of the Cure Costs by the Buyer, and the Buyer shall have no Liability arising or accruing under the Desired 365 Contracts on or prior to the Closing, except as otherwise expressly provided in the Asset Purchase Agreement.  Except as set forth in section 5.04(b) of the Asset Purchase Agreement, neither Buyer nor any of its Subsidiaries shall have any Liability (other than the Assumed Liabilities) or obligation to any Person for any default under or Cure Costs related to any 365 Contract of any Debtor existing at or prior to the Closing, subject to adjustments to the Purchase Price as contemplated in the Asset Purchase Agreement.  The Debtors shall have no Liability for Cure Costs with respect to the Desired 365 Contracts.

17.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all parties to the Desired 365 Contracts are barred from asserting against the Debtors, the Buyer, and their respective successors and assigns, any default or unpaid obligation allegedly arising or occurring before the Closing, any pecuniary loss resulting from such default, or any other obligation under the Desired 365 Contracts arising or incurred prior to the Closing, other than the Cure Costs.

WEIL:\95546570\2\43794.0004

18.     The failure of the Debtors or the Buyer to enforce at any time one or more terms

or conditions of any Desired 365 Contract shall not be a waiver of such terms or conditions or of

the right of the Debtors or the Buyer, as the case may be, to enforce every term and condition of

the Desired 365 Contracts.  The validity of the assumption, assignment, and sale of the Desired

365 Contracts to the Buyer shall not be affected by any existing dispute between any of the

Debtors and any non-Debtor party to such Desired 365 Contracts.  Any party that may have had

the right to consent to the assignment of any Desired 365 Contract is deemed to have consented for

the purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code.

19.     To the extent a counterparty to a Desired 365 Contract failed to timely object to

Cure Costs, such Cure Costs shall be deemed to be finally determined and any such counterparty

shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure

Costs at any time, and such Cure Costs, when paid, shall completely revive any Purchased

Contract to which it relates.

20.     The assumption and assignment of the Desired 365 Contracts will be effective

upon the Closing Date.

*No Successor Liability*

21.     The Buyer and its affiliates, successors, and assigns shall not be deemed, as a

result of any action taken in connection with the transfer of the Properties, to (i) be a successor to

the Debtors or their estates, (ii) have, *de facto* or otherwise, merged or consolidated with or into

the Debtors or their estates, or (iii) be a continuation or substantial continuation of the Debtors or

any enterprise of the Debtors, and the Purchaser and their affiliates shall have no successor,

transferee or vicarious liability of any kind or character, including, but not limited to, under any

theory of foreign, federal, state or local antitrust, environmental, successor, tax, assignee or

transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or

15

other law, rule, or regulation, whether known or unknown as of the closing of the Sale, now

existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or

unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the

Closing Date, including, but not limited to, liabilities on account of any taxes or other

Governmental Body fees, contributions, or surcharges arising, accruing, or payable under, out of,

in connection with, or in any way relating to, the operation of the Properties prior to the Closing

Date. Except as otherwise provided herein or in the Asset Purchase Agreement, the transfer of the

Properties to the Buyer pursuant to the Asset Purchase Agreement shall not result in the Buyer or

their affiliates, members, or shareholders, or the Properties, having any liability or responsibility

for, or being required to satisfy in any manner, whether in law or in equity, whether by payment,

setoff or otherwise, directly or indirectly, (i) any claim against the Debtors or against any insider of

the Debtors, or (ii) any lien, claim, encumbrance, or other interest.

22.     Upon the Closing Date, the Buyer shall not be liable for any claims against, and

liabilities of, the Debtors or any of the Debtors' predecessors or affiliates (including, without

limitation, any claim against the Debtors arising out of a rejected contract).

23.     The Buyer has given substantial consideration under the Asset Purchase

Agreement to the Debtors' estates. The consideration given by the Purchaser shall constitute

valid and valuable consideration for the releases of any potential claims of successor or

transferee liability of the Purchaser, which releases shall be deemed to have been given in favor

of the Buyer by all holders of liens, claims, encumbrances, and other interests against the

Debtors or the Asset Purchase Agreement.

*No Fraudulent Transfer*

24.     The consideration provided by the Buyer under the Asset Purchase Agreement

constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent

16

Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable Laws of the United States, any state, territory, or possession thereof, or the District of Columbia. The consideration provided by the Buyer for the Properties under the Asset Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

*Good Faith*

25.    The Asset Purchase Agreement and the Sale are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Asset Purchase Agreement and the Sale shall not affect the validity of the sale of the Properties to the Buyer, unless this Order is duly stayed pending such appeal. The Buyer is a good faith purchaser of the Properties and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

**Environmental Liabilities**

26.    Nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any environmental liability to a governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Nothing in this Order or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (i) license, (ii) permit, (iii) registration, (iv) authorization or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under environmental law to interpret this Order or to adjudicate any defense asserted under this Order.

**Preservation of Records**

27.    Pursuant to the terms of the Asset Purchase Agreement, the Buyer shall preserve

all books and records relating to the Debtors or any of their businesses or operations for any and all

periods prior to or including the Closing Date for a period of three (3) years from the Closing Date;

provided, however, that Buyer shall have the right at any time after the second anniversary of the

Closing Date to request in writing that the Debtors take any such records and, if the Debtors do not

agree to take such records within ninety (90) Business Days after receipt of the request, Buyer (or

its Subsidiaries, as applicable) may dispose of such records.

*Additional Provisions*

28.    The Buyer shall assume the Assumed Liabilities set forth in the Asset Purchase

Agreement.

29.    All Persons that are in possession of some or all of the Properties as of or after the

Closing are hereby directed to execute such documents and take all other actions as may be

necessary to surrender possession of such Properties to the Buyer as of the Closing or at such time

thereafter as the Buyer may request.  The Debtors agree to exercise commercially reasonable

efforts to assist the Buyer in assuring that all Persons that are presently, or on the Closing Date

may be, in possession of some or all of the Properties in which the Debtors hold an interest will

surrender possession of the Properties either to (i) the Debtors before the Closing Date or (ii) the

Buyer on or after the Closing Date.

30.    To the greatest extent available under applicable law, the Buyer shall be

authorized, as of the Closing Date, to operate under any license, permit, registration, and

governmental authorization or approval of the Debtors with respect to the Properties, and all such

licenses, permits, registrations, and governmental authorizations are deemed to have been, and

hereby are, deemed to be transferred to the Buyer as of the Closing Date.

18

31.     This Order is and shall be binding upon and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons, who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Properties free and clear of all liens, claims, encumbrances, and other interests, except for the Assumed Liabilities, (all such entities being referred to as "*Recording Officers*").  All Recording Officers are authorized and specifically directed to strike recorded liens, claims, encumbrances, and interests against the Properties recorded prior to the date of this Order unless the Asset Purchase Agreement expressly provides that the Buyer is acquiring the Properties subject to such claims, liens, and interests.

32.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Properties sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

33.     Following the Closing, no holder of any lien, claim, encumbrance, or other interest in the Properties or other party in interest, other than holders of Assumed Liabilities, may interfere with the Buyer's use and enjoyment of the Properties based on or related to such lien, claim, encumbrance, or other interest, or any actions that the Debtors may take in their chapter 11 cases, and no party may take any action to prevent, interfere with or otherwise enjoin consummation of the Sale.

19

34.     Except as otherwise expressly provided in the Asset Purchase Agreement, the Buyer shall have no obligation to pay wages, bonuses, severance pay, or any other payment with respect to employees or former employees of the Debtors.  Except as otherwise expressly provided in the Asset Purchase Agreement, the Buyer shall have no Liability with respect to any employee welfare or retention, benefit and/or incentive plan to which any Debtor is a party and relating to the Properties (including, without limitation, arising from or related to the rejection or other termination of any such agreement), and, except as expressly provided in the Asset Purchase Agreement, the Buyer shall in no way be deemed a party to or assignee of any such agreement, and no employee of the Buyer shall be deemed in any way covered by or a party to any such agreement, and all parties to any such agreement are hereby enjoined from asserting against the Buyer any and all claims arising from or relating to such agreement.  All notices, if any, required to be given to the Debtors' employees prior to Closing pursuant to any federal or state law, shall be the sole responsibility and obligation of the Debtors, and the Buyer shall have no duties, responsibility, or Liability therefor.

35.     Except as expressly permitted or otherwise specifically provided by the Asset Purchase Agreement or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding interests of any kind or nature whatsoever against or in the Debtors or the Properties (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Properties, the ownership or operation of the Properties prior to the closing of the sale, or the sale of the Properties are forever barred, estopped, and

WEIL:\95546570\2\43794.0004

permanently enjoined from asserting against the Buyer, its successors or assigns, its property, or the Properties, such persons' or entities' interests.

36.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Asset Purchase Agreement and the Sale.

37.     The terms and provisions of the Asset Purchase Agreement, the ancillary agreements, and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, the Buyer, and their respective Affiliates, successors, and assigns, their estates, all creditors of (whether known or unknown) and holders of equity interests in the Debtors, and any affected third parties, notwithstanding the dismissal of any of the Debtors' cases or any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code or conversion of the Debtors' cases to cases under chapter 7, as to which trustee(s) such terms and provisions likewise shall be binding and not subject to rejection or avoidance.  The Asset Purchase Agreement, the Sale and this Order shall be enforceable against and binding upon, and shall not be subject to rejection or avoidance by, any chapter 7 or chapter 11 trustee appointed in the Bankruptcy Cases. Further, nothing contained in any order entered in these cases shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Order.

38.     The Asset Purchase Agreement and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court, provided that any such amendment does not have a material adverse effect on the Debtors or the Debtors' estates.

39.     The failure to include specifically any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being

21

the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

40.     To the extent of any inconsistency between the provisions of this Order, the Asset Purchase Agreement, and any documents executed in connection therewith, the provisions contained in this Order, the Asset Purchase Agreement, and any documents executed in connection therewith shall govern, in that order.

41.     Nothing in this Order shall affect the rights, if any, of mineral lien holders against non-Debtor working interest owners, or the rights, if any, of such non-Debtor working interest owners against such mineral lien holders, and provided that this reservation of rights shall not create any rights in favor of such mineral lien holders or such non-Debtor working interest owners.

42.     Nothing in this Order, the Asset Purchase Agreement or any document executed in connection with the consummation thereof shall authorize or constitute a transfer of title to property which is excluded from the property of the Debtors' estates pursuant to section 541(b)(4) of the Bankruptcy Code

43.     The provisions of this Order are non-severable and mutually dependent. Headings are included in this Order for ease of reference only.

44.     The provisions of this Order authorizing the sale and assignment of the Properties free and clear of all liens, claims, encumbrances, and other interests shall be self-executing, and notwithstanding the failure of the Debtors, the Buyer, or any other party to execute, file, or obtain releases, termination statements, assignments, consents, or other instruments to effectuate, consummate and/or implement the provisions hereof, all liens, claims, encumbrances, and other interests (other than those expressly assumed by the Buyer or permitted to survive under the Asset

22

Purchase Agreement) on or against such Properties, if any, shall be deemed released, discharged, and terminated.

45.    From time to time, as and when requested by any Party, each Party to the Asset Purchase Agreement shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale, including such actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in Buyer its right, title, and interest in and to the Properties.

46.    Notwithstanding the provisions of Bankruptcy Rule 6004(h) and 6006(d), this Order shall be effective and enforceable immediately and shall not be stayed. Time is of the essence in closing the Sale and the Debtors and the Buyer intend to close the Sale as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being dismissed as moot.

47.    This Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Asset Purchase Agreement, all amendments thereto, and any waivers and consents thereunder, and each of the agreements executed in connection therewith, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Properties to the Buyer; (ii) interpret, implement, and enforce the provisions of this Order and the Asset Purchase Agreement; (iii) adjudicate, if necessary, any and all disputes arising out of, concerning, or otherwise relating in any way to the Sale; and (iv) protect the Buyer against any liens, encumbrances, claims, and interests in the Properties of any kind or nature whatsoever.

Dated: _December 1_, 2015
Wilmington, Delaware

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

23